IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

PREMIUM NUTRACEUTICALS, LLC,    *
                                *
        Plaintiff,              *
                                *
    v.                          *    CV 115-141
                                *
LEADING EDGE MARKETING, INC,    *
et al.,                         *
                                *
        Defendants.             *

---

**O R D E R**

---

Currently before the Court is Defendant Leading Edge Marketing, Inc.'s motion to dismiss for lack of personal jurisdiction and improper venue. (Doc. 8.) For the reasons explained below, the Court **DENIES** the motion.

### I. Background

This case arises out of Defendants' alleged misuse of Plaintiff's trademark and their alleged unfair business practices. Defendant Leading Edge Marketing, Inc. ("Leading Edge") develops and sells "natural health products," including two sexual-enhancement supplements — VigRX and VigRX Plus. (Doc. 8, Ex. 2 ¶ 3.) Plaintiff also produces two sexual-enhancement supplements — VYDOX and VYDOX Plus. (Doc. 1 ¶ 9-

11.) Plaintiff successfully registered a trademark for VYDOX on December 2, 2014. (Id. ¶ 14.)

As part of its marketing scheme, Leading Edge enlists third-party affiliates to help facilitate online sales.[1] (Doc. 8, Ex. 2 ¶ 16.) The affiliate marketers create websites on which they advertise Leading Edge's products and attempt to drive internet traffic to Leading Edge's website by providing links to Leading Edge's website. (Id. ¶ 18; see Doc. 13, Ex. 1 ¶ 8.) According to Plaintiff, a number of these websites improperly use Plaintiff's trademark as a marketing ploy for Leading Edge. (Doc. 1 ¶ 27-32.) Although Plaintiff's complaint specifically references only three websites,[2] Plaintiff maintains that it has, through the use of cyber investigation, uncovered hundreds of offending websites related to Leading Edge's marketing scheme. (Doc. 11, Ex. 3.)

During the year preceding the current motion, 1.44% of Leading Edge's VigRx-related sales were made to Georgia residents. (Doc. 8, Ex. 2 ¶ 15.) During that same year,

---

[1] According to Plaintiff's complaint, Leading Edge's website describes the marketing program as follows: "For more than a decade, SellHealth.com has been helping tens of thousands of affiliates earn substantial commission incomes each month with our lineup of natural health products. We're regularly adding NEW products to our network — giving you fresh opportunities to target new niches (or, extract more income from the vertical market you are already pursuing)." (Doc. 1 ¶ 21.)

[2] The websites mentioned in the complaint are: www.vydoxscam.com, www.ivigrxplusreviews.com, and www.clarkoneill.com.

Leading Edge made thirty-four sales, totaling $5,437.24, to Georgia residents through the affiliate websites uncovered by Plaintiff's cyber investigation. (Doc. 13, Ex. 1 ¶ 10.)

On September 9, 2015, Plaintiff initiated this action and alleges that Defendants[3] infringed on its trademark in violation of 15 U.S.C. §§ 1114 and 1125 (doc. 1 ¶¶ 42-45), engaged in unfair competition and false advertising in violation of 15 U.S.C. § 1125 (id. ¶¶ 46-51), engaged in cybersquatting in violation of 15 U.S.C. § 1125 (id. ¶¶ 52-57), and engaged in unfair business practices in violation of O.C.G.A. § 10-1-370 (id. ¶¶ 58-60). Plaintiff's complaint also specifically seeks to hold Leading Edge liable based on contributory and vicarious trademark infringement. (Id. ¶¶ 61-68.)

Leading Edge now moves to dismiss Plaintiff's claims for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).

## II. Discussion

### 1. Personal Jurisdiction

"'A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima

---

[3] The only other named Defendant in this lawsuit, Boris Santana, has not appeared.

facie case of jurisdiction.'" Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)). "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." Id. (citation omitted) (internal quotation marks omitted). If the plaintiff's complaint and evidence conflict with the defendant's evidence, "the court must construe all reasonable inferences in favor of the plaintiff." Id. (citation omitted) (internal quotation marks omitted); see also Sarvint Techs. V. OMsignal, Inc., __ F. Supp. 3d __, 2015 WL 10960931, at *2 (N.D. Ga. 2015) ("In determining whether the plaintiff has proven a *prima facie* case of personal jurisdiction, the court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.").

When faced with a motion to dismiss for lack of personal jurisdiction, the Court engages in a two-step inquiry. Diamond Crystal, 593 F.3d at 1257-58. First, jurisdiction must be appropriate under the state's long-arm statute, and second, the exercise of personal jurisdiction must not violate due process. Id.

### a. Georgia's Long-Arm Statute

Georgia's long-arm statute provides, in relevant part:

> A court of this state may exercise personal jurisdiction over any nonresident or his or executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state;
>
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; . . . .

O.C.G.A. § 9-10-91. "Interpreted literally, transacts any business requires that the nonresident defendant has purposefully done some act or consummated some transaction in [Georgia]." Diamond Crystal, 593 F.3d at 1264 (citation omitted) (internal quotation marks omitted) (alteration in original). But "a defendant need not physically enter the state . . . . [A] nonresident's mail, telephone calls, and other intangible acts, though occurring while the defendant is physically outside of Georgia, must be considered." Id. (citation omitted) (internal quotation marks omitted).

Here, Leading Edge maintains that it did not transact any business in Georgia. Its own evidence, however, provides otherwise. As noted, in the year preceding the current motion, 1.44% of Leading Edge's VigRX-related sales were to Georgia residents and it completed thirty-four sales through the websites listed in Plaintiff's cyber report. These online sales are sufficient to satisfy subsection (1) of the long-arm statute. See Wish Atlanta, LLC v. Contextlogic, Inc., No. 4:14-CV-00051(CDL), 2014 WL 5091795, at *3 (M.D. Ga. Oct. 9, 2014).

**2. Due Process**

Because Georgia's long-arm statute confers jurisdiction over Leading Edge, the Court now considers whether exercising jurisdiction over Leading Edge complies with constitutional due process. To satisfy the constitutional requirement, a defendant must have "'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Diamond Crystal, 593 F.3d at 1267 (citing Helicopteros Nacionales de Colombia, SA v. Hall, 466 U.S. 408, 414 (1984)) (alteration in original). A defendant must have "fair warning" that its acts may subject it to a court's jurisdiction, and the acts must relate to the litigation for which the defendant is brought into the court. Id. "Once this showing is made, a defendant must make a compelling case that the exercise of jurisdiction would violate

6

traditional notions of fair play and substantial justice." Id. (internal quotation marks omitted).

### a. Purposeful Availment

The Eleventh Circuit has not adopted a specific test for cases involving Internet contacts. See Rice v. PetEdge, Inc., 975 F. Supp. 2d 1364, 1370 (N.D. Ga. 2013). Courts in this Circuit have applied the sliding-scale approach established in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), and the traditional availment analysis applied to non-Internet cases. See Rice, 975 F. Supp. 2d at 1370-71. The Court will, therefore, address both analyses. Under either, the Court finds that Leading Edge has purposefully availed itself of this forum.[4]

Under the sliding-scale test developed in Zippo, the nature of the website is controlling. On one end of the spectrum are interactive websites through which a defendant transacts business over the Internet. Zippo, 952 F. Supp. at 1124. On the other end are passive websites on which users simply post information. Id. Here, Leading Edge's website clearly falls on the interactive side of the scale. It is undisputed that

---

[4] Leading Edge also asserts that it could not have anticipated being haled into court in this forum because purchasers who order products from its website agree to an arbitration agreement. Unsurprisingly, Leading Edge does not argue that Plaintiff is bound by this agreement, and the Court fails to see the relevance of this agreement. Accordingly, the Court is not persuaded that Leading Edge's arbitration policy shows that Leading Edge could not have anticipated litigating in this forum.

7

customers can purchase Leading Edge's products through its website. Moreover, to the extent this test should be applied to the marketers' websites, the record indicates that those websites also fall on the interactive side of the scale. Customers who visit these websites are directed to Leading Edge's website — often through interactive links — where they can then purchase Leading Edge's products. Accordingly, the Court is satisfied that, under the Zippo test, there are sufficient contacts.

Under a more traditional analysis, the Court reaches the same conclusion. Under this approach, courts focus on whether a defendant has purposefully reached out to the forum state. See Rice, 975 F. Supp. 2d at 1371. A small amount of sales made through a website accessible nationwide will suffice. See id. ("Defendant's creation of a website that allows Georgia customers to directly purchase its products constitutes purposeful availment, as defendant financially benefits from doing business in Georgia."); Wish Atlanta, 2014 WL 5091795, at *5 ("[A]uthority suggests that a corporation purposefully avails itself of a forum when the corporation derives revenue from the forum state, even when that revenue represents only a small percentage of the corporation's total annual revenue.").

Here, the only evidence in the record indicates that 1.44% of its sales in the year preceding the current motion were to

Georgia residents, and Leading Edge made over $5,000 in sales to this state through the marketers' websites during that same year. These sales, made through its website that is available to Georgia residents, indicate that Leading Edge purposefully availed itself of this forum. Furthermore, to the extent Leading Edge argues that it did not specifically target Georgia — as opposed to the nation as a whole — the Court rejects this argument. See Rice, 975 F. Supp. 2d at 1371-72 ("If defendant wished to avoid litigation in Georgia, it could have organized its website so that it wasn't selling its products in this state.").

### b. Relatedness

A defendant's contact with the forum state must relate to the issues being litigated. Oldfield v. Pueblo De Bahia Lora, SA, 558 F.3d 1210, 1220 (11th Cir. 2009). The Eleventh Circuit has not developed a specific relatedness test. Id. at 1222. Indeed, it has "heeded the Supreme Court's warning against using 'mechanical or quantitative' tests." Id. (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)).

In this case, Plaintiff asserts that Leading Edge's marketers improperly used Plaintiff's trademark in order to solicit business for Leading Edge, including sales to Georgia. And Leading Edge admits that it made sales to Georgia residents who were directed to its website by the marketers' websites.

9

Further, Plaintiff seeks to hold Leading Edge vicariously liable for the marketers' trademark infringement. Accordingly, the Court is satisfied that Plaintiff's claims relate to Leading Edge's contacts with this state.

**c. Fairness**

Because the Court is satisfied that Leading Edge has minimum contacts with this forum, the burden shifts to Leading Edge to show that exercising jurisdiction would offend the traditional notions of fair play and substantial justice. Diamond Crystal, 593 F.3d at 1266 ("Once this showing is made, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice."). On this issue, the Court looks to "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." Id. at 1274 (citation omitted) (internal quotation marks omitted).

Leading Edge makes two primary arguments on this issue. First, it asserts that because Leading Edge is based in Canada, "it would incur great hardship and expense in having to have its employees haled into court in Georgia to defend a lawsuit."

10

(Doc. 13 at 23.) This alone, however, is insufficient to show that jurisdiction over Leading Edge offends traditional notions of fair play and substantial justice. See Wish Atlanta, 2014 WL 5091795, at *7 ("[I]t is not uncommon to require an out-of-state corporation to defend itself in a forum located across the country."). Next, Leading Edge argues that jurisdiction is unfair because Plaintiff's claims are based on independent contractors' acts. Specifically, Leading Edge asserts that "[i]t is inherently unfair to subject Leading Edge to the time and expense required to answer to a lawsuit in a foreign country dealing with allegation of wrongful conduct on websites operated by independent marketers over whom it asserts no control and specifically disclaims responsibility for on its website." (Doc. 13 at 23-24.) Leading Edge essentially argues that, because its contacts are made through independent contractors, it is unfair to require it to litigate here. The Court, however, is unaware of any controlling authority supporting such a proposition. Leading Edge has failed to make a compelling case that litigating in this forum is unfair.

Because Leading Edge has sufficient contacts with this state, and because exercising jurisdiction does not offend the traditional notions of fair play and substantial justice, the Court **DENIES** Leading Edge's motion to dismiss for lack of personal jurisdiction.

11

### 3. Venue

Under 28 U.S.C. § 1391, venue is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action . . . .

28 U.S.C. § 1391(b). "When a defendant objects to venue, [t]he plaintiff has the burden of showing that venue in the forum is proper." Bell v. Rosen, No. CV 214-127, 2015 WL 5595806, at *2 (S.D. Ga. Sept. 22, 2015) (citation omitted) (internal quotation marks omitted) (alteration in original). When a court considers a motion to dismiss for improper venue, it accepts the facts alleged in the plaintiff's complaint as true. Id. "However, when a Rule 12(b)(3) motion is predicated on key issues of fact, the Court may consider matters outside the pleadings." Id. (citation omitted) (internal quotation marks omitted). "Where conflicts exist between the allegations in the complaint and the evidence outside of the pleadings, the court must draw all reasonable inferences and resolve all factual conflicts in favor

12

of the plaintiff." Id. (citation omitted) (internal quotation marks omitted).

Here, Plaintiff bases venue on 28 U.S.C. § 1391(b)(2). Generally, the substantial-part requirement demands a greater level of contacts than the personal-jurisdiction test, but a plaintiff is "not required to select the venue with the *most* substantial nexus to the dispute . . . ." Bell, 2015 WL 5595806, at *4. Plaintiff's complaint specifically alleges that Leading Edge products were sold and advertised in this district, and Leading Edge does not directly dispute that contention. Indeed, as noted above, Leading Edge admits that it sold over $5,000-worth of VigRX-related to products to Georgia residents in the year preceding the current motion. Viewing the evidence and pleadings in the light most favorable to Plaintiff, the Court **DENIES** Leading Edge's motion to dismiss for improper venue.

### III. Conclusion

For the reasons explained above, the Court **DENIES** Leading Edge's motion to dismiss. (Doc. 8.) In its motion, Leading Edge also requests oral argument. Because the Court has resolved this motion without oral argument, Leading Edge's request is **DENIED**. Further, pursuant to the Court's Order staying discovery in this case (doc. 18), the parties are

instructed to file a supplemental Rule 26(f) report within **seven days from the date of this Order.**

**ORDER ENTERED** at Augusta, Georgia this 12th day of July, 2016.

```
_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA
```